**UNITED STATES of America, Plaintiff,**

v.

**Leone BOSURGI and Emilio Bosurgi, as Executors of the Estate of Adriana Bosurgi, Deceased, Et al., Defendants.**

**No. 71 Civ. 928.**

United States District Court, S. D. New York.

June 5, 1972.

Whitney North Seymour, Jr., U. S. Atty., for the S. D. N. Y., New York City, for the United States; Michael I. Saltzman, Asst. U. S. Atty., of counsel.

Gainsburg, Gottlieb, Levitan & Cole, New York City, appearing specially for defendant Sociedad Anonima de Inversions Commerciales e Industriales; Samuel Gottlieb, Alan C. Krieger, New York City, of counsel.

Benedict Ginsburg, New York City, for defendants Leone and Emilio Bosurgi.

Cravath, Swaine & Moore, New York City, for Chemical Bank New York Trust Co.

EDWARD WEINFELD, District Judge.

The defendant Sociedad Anonima de Inversions Commerciales e Industriales (SAICI) moves pursuant to Rule 12(b) of the Federal Rules of Civil Procedure to vacate the purported service upon it of the amended summons and complaint; the contention is that the attorney upon whom process was served, though retained to bring a related suit in the state court, was not an "agent authorized by appointment . . . to receive service of process."[1] This action, as well as two pending state court actions, center about a fund of $215,000 and claims thereto made by the various litigants in those actions. It is necessary to a determination of this motion to describe a portion of the procedural maze which has arisen out of these litigations.

On September 15, 1970, Leone and Emilio Bosurgi entered into a stipula-

---

1. Fed.R.Civ.P. 4(d) (3).

tion settling their lawsuit then pending in the New York State Supreme Court against the Chemical Bank New York Trust Company for the sum of $215,000. Under the terms of the settlement, Chemical agreed that the $215,000 was "to be paid to Benedict Ginsberg, attorney for plaintiffs, and held by him in escrow pending determination of claims asserted by the Internal Revenue Service of the United States Government against the defendant arising out of their [sic] relationship as banker, depository or custodian of the funds of the plaintiffs or their late mother, Adrianna Bosurgi." Thereafter, on March 2, 1971, the United States commenced the present action against the Chemical Bank and the Bosurgis, individually and as executors of the estate of Adriana Bosurgi, seeking to foreclose certain tax liens against property within the jurisdiction of this court, including the fund to be paid by Chemical Bank in settlement of the state court action brought by the Bosurgis. On March 18, 1971, Judge Bonsal denied a motion for preliminary injunction restraining payment of the fund to the Bosurgis, but ordered instead that Chemical Bank pay over to Benedict Ginsberg, attorney for the Bosurgis, the sum of $215,000 for the purchase of certificates of deposit, and that Ginsberg "have and hold the said certificates of deposit in escrow subject to and impressed with any and all liens of the United States of America, and subject to any further order of this Court which may be made with regard to the rights of the United States of America, and any other claimant to the said $215,-000." [2]

In June 1971, still another claimant to the fund appeared, SAICI, the movant here. Its attorneys then commenced an action in New York State Supreme Court against the Bosurgis and Benedict Ginsberg, claiming that the settlement fund "is the property of and accountable to [SAICI]," and seeking to have Ginsberg pay over the escrow fund to SAICI. Despite the fact that the government already had asserted its tax lien against the fund, the United States was not named as a party in that action. Faced with this added claim to the fund, the United States, on November 29, 1971, obtained an order allowing the filing of an amended complaint, adding as defendants SAICI and Ginsberg, who claimed an interest in the fund for attorneys fees, and directed that the summons and complaint be served "in accordance with the Federal Rules of Civil Procedure." The amended complaint alleges that SAICI "may have or may claim to have an interest in the settlement fund. . . ." The United States caused process to be served on the attorneys [3] appearing for SAICI in SAICI's state court action seeking to obtain the fund; it is this process SAICI now claims is invalid.

■■ An attorney, solely by reason of his capacity as an attorney, does not thereby become his client's agent authorized by "appointment . . . to receive service of process." [4] Nor is the fact that an attorney represents his client in a completely unrelated litigation sufficient to establish the requisite authority. [5] What is necessary is that it appear that the attorney was authorized, either expressly or impliedly, to receive service of process for his client. [6] And

2. This order was affirmed by the Second Circuit in open court on April 21, 1971.

3. The service was made upon the senior partner of the firm.

4. *See* Ransom v. Brennan, 437 F.2d 513, 518 (5th Cir.), cert. denied, 403 U.S. 904, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971); United States v. Marple Community Record, Inc., 335 F.Supp. 95, 101 (E.D.Pa.1971); cf. Stone v. Bank of

Commerce, 174 U.S. 412, 421, 19 S.Ct. 747, 43 L.Ed. 1028 (1899).

5. Schultz v. Schultz, 436 F.2d 635, 639 (7th Cir. 1971); Schwarz v. Thomas, 98 U.S.App.D.C. 365, 222 F.2d 305, 307–308 (1955).

6. Christensson v. Hogdal, 91 U.S.App.D.C. 251, 199 F.2d 402, 404 n. 3 (1952); United States v. Marple Community Record, Inc., 335 F.Supp. 95, 101 (E.D.Pa. 1971).

if such agency is to be implied, it must be implied from all the circumstances accompanying the attorney's appointment which indicate the extent of authority the client intended to confer.[7]

It is beyond question that SAICI's attorneys were retained to assert its alleged right to, and to obtain possession of, the $215,000.[8] This retainer necessarily required the attorneys to resist the claims to the fund asserted by other parties, including the United States Government. Receipt of process by the attorney in this suit, which involves relative rights to the settlement fund, was a necessary incident of the attorney's effort to establish SAICI's claim to the settlement fund by opposing the claims of the government, as well as those of the other claimants.[9] Litigation with the United States must have been intended as within the scope of the attorney's authority, since to obtain the fund for SAICI, its attorneys would inevitably have to face and overcome the claim of the United States. In June 1971, when SAICI's attorneys brought the state court action, the government had already asserted its lien against the fund. The fund was held in escrow subject to any further order of this court with regard to the United States and any other claimants; and the custodian named by this court was named as a defendant in SAICI's state court suit. In sum, upon the facts here presented, SAI-CI's attorneys were impliedly authorized to receive service of process on behalf of SAICI, a defendant in this suit, which, insofar as SAICI is here involved, seeks to determine its rights, if any, to the settlement fund—the very object for which they were initially appointed.

It is appropriate to note that in the instant litigation service upon SAICI's attorneys was not only adequate, but probably optimal. As one court noted in similar circumstances:

"There is no fear . . . that service of the summons and complaint upon [the attorney] would not be brought home to each principal. This is at times a matter of concern in these problems of service of process through claimed authorized agent. That service of process upon their lawyer would bring notice of the lawsuit to [the principals] seems beyond argument and is evident here from the motion itself in their behalf to quash the service. Also, a lawyer endowed with all the authority given as here to act and appear is about the best candidate one could choose to insure notice of a pending lawsuit." [10]

Having concluded that SAICI's attorney was an agent authorized by appointment to receive service of process in this action, it is unnecessary to determine whether service would also have been proper under New York's CPLR, section 303.[11] This court has held that the sec-

---

7. See United States v. Balanovski, 236 F.2d 298, 303 (2d Cir. 1956), cert. denied, 352 U.S. 968, 77 S.Ct. 357, 1 L.Ed.2d 322 (1957); United States v. Davis, 38 F.R.D. 424 (N.D.N.Y.1965); 2 J. Moore, Federal Practice ¶ 4.12, at 1048–51 (1970); Wright & Miller, Federal Practice & Procedure: Civil § 1097, at 371–72 (1969).

8. Unlike the situation in the *Balanovski* and *Davis* cases, the specific agreement of retainer has not been submitted on this motion and the scope of the attorney's authority must be ascertained solely from the circumstances of the suit he has brought on SAICI's behalf in state court.

9. See Kane v. U. S. S. R., 267 F.Supp. 709, 713 (E.D.Pa.1967), aff'd, 394 F.2d 131

(3d Cir. 1968) (per curiam); Restatement (Second) of Agency §§ 34, 35 (1958).

10. United States v. Davis, 38 F.R.D. 424, 425–426 (N.D.N.Y.1965).

11. The section provides: "The commencement of an action in the state by a person not subject to personal jurisdiction is a designation by him of his attorney appearing in the action or of the clerk of the court if no attorney appears, as agent, during the pendency of the action, for service of a summons in any separate action in which such a person is a defendant and another party to the action is a plaintiff if such separate action would have been permitted as a counter-

tion may be used by the assignee of a cause of action—the real party defendant in the state court action—when the assignor is the named defendant in the state court action.[12] Here, there has been no assignment and the United States is not a party to the state court action. The custodian of the fund appointed by this court is a named party, and the previous order of this court indicates the continuing interest of the United States in that fund. Whether CPLR section 303 should be extended to cover such a situation is a matter best left to resolution by the New York State courts in an appropriate case.

The motion is denied.

claim had the action been brought in the supreme court."

12. *See* United States v. World Transp. Ltd., 322 F.Supp. 385 (S.D.N.Y.1971).